# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| **LINKEPIC INC., a Nevada company, GMAX INC., a Nevada company, VEOXO INC., an Illinois company, JUSTIN LONDON, an individual**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**VYASIL, LLC, a California company, D/b/a eWITTAS, MEHUL VYAS, an individual, KARL WITTSTROM, an individual, RYAN TANNEHILL d/b/a RMT ENTERPRISES, an individual**<br><br>**Defendants.** | Case No. 12-cv-9058 |

## EXPERT REPORT OF
## JEFFERY A. STEC, Ph.D.
## SEPTEMBER 12, 2016



**HIGHLY CONFIDENTIAL -
OUTSIDE COUNSEL ONLY**

# 1    <u>INTRODUCTION</u>

1.      I have been retained by counsel on behalf of Karl Wittstrom and Ryan Tannenhill d/b/a RMT Enterprises (collectively "Defendants"), Defendants in Case No. 12-cv-9058. Specifically, I understand that Linkepic Inc., GMAX Inc., Veoxo Inc., and Justin London (collectively "Plaintiffs") allege that Defendants have committed various wrongdoing as detailed in the Plaintiffs' Third Amended Complaint at Law.[1] From these alleged actions, the Plaintiffs claim to have suffered damages and demand compensation in the form of compensatory damages, expectation damages, consequential damages, attorneys' fees, and punitive damages.[2]

2.      As quantification for their damages claims, the Plaintiffs have put forth their "computation of damages" where they provided damages estimates, with no underlying support, for "expectation damages" due to "lost IP" and no damages estimate for "consequential damages."[3]

3.      Counsel for the Defendants has asked me to review the information available regarding "expectation damages", specifically with respect to "lost IP,"[4] and "consequential damages"[5] in order to determine whether there is evidence that the Plaintiffs have suffered these types of damages. If there is evidence of "expectation damages" due to "lost IP" and/or "consequential damages," Defendants' counsel asked me to determine these economic damages associated with Plaintiff's claims of wrongdoing. As part of these analyses, I examined the available information produced to date.[6] It is my understanding that the Defendants contest the Plaintiffs' claims of wrongdoing;[7] however, in order to conduct my analysis, I have assumed that the alleged wrongdoing has occurred.

---

[1] Third Amended Complaint at Law, 9/15/15, pp. 16-22.
[2] Plaintiffs' Objections and Answers to Defendants Interrogatories to Plaintiffs, 2/26/16, pp. 7-8; Plaintiffs' Third Supplemental Rule 26(a) Disclosures, pp. 5-6.
[3] Plaintiffs' Objections and Answers to Defendants Interrogatories to Plaintiffs, 2/26/16, pp. 7-8; Plaintiffs' Third Supplemental Rule 26(a) Disclosures, pp. 5-6.
[4] Plaintiffs' Objections and Answers to Defendants Interrogatories to Plaintiffs, 2/26/16, p. 8; Plaintiffs' Third Supplemental Rule 26(a) Disclosures, p. 5.
[5] Plaintiffs' Objections and Answers to Defendants Interrogatories to Plaintiffs, 2/26/16, p. 8; Plaintiffs' Third Supplemental Rule 26(a) Disclosures, p. 6. The Plaintiffs do not specify any types of consequential damages. As a result, I attempted to determine whether there was evidence that the Plaintiffs suffered lost profits or whether the Defendants were unjustly enriched due to the alleged wrongdoing.
[6] Exhibit 3.0 contains a list of the documents reviewed and/or relied upon.
[7] Defendants Wittstrom and Tannenhill's Answer to Third Amended Complaint at Law, 12/17/15; Defendants Wittstrom and Tannenhill's Amended Affirmative Defenses, 7/8/16.



4.      The following report summarizes my current opinions. The information in this report is based upon discovery to date and the information that is currently available. To the extent additional information is produced, brought to my attention, or relied upon, I may supplement this report, if warranted, based on this additional information. In addition, to the extent that the Plaintiffs provide expert testimony that addresses these damages theories, I may be asked to review and critically evaluate that testimony.

5.      My firm is currently compensated for the time spent by me at the rate of $575 per hour. Charles River Associates' compensation does not depend in any way on the outcome of this litigation.

## 2    QUALIFICATIONS

6.      I am a Vice President with Charles River Associates ("CRA"), an international economic consulting firm focused on advising clients and counsel in the areas of complex litigation and intellectual property matters in the context of economics, strategy, valuation, licensing, and litigation support services.

7.      I have served as an expert to a wide variety of clients on matters involving economic, financial, and statistical analysis and modeling for the purpose of interpreting and projecting data and evaluating the impact of business decisions, transactions, and economic events. I have also served as an expert witness or consultant in a wide range of litigation matters, including intellectual property, antitrust, financial, and commercial litigation, such as false advertising cases. While the issues have varied from case to case, most included an analysis and evaluation of company-specific as well as industry-wide data for the purpose of investigating economic issues and determining the extent of economic damages.

8.      I received Ph.D. and Master's degrees in Economics from the Ohio State University. I received Bachelor of Arts degrees in Philosophy and Psychology from Cornell University and in Economics with a Math minor from the University of Illinois-Chicago. I am a member of various professional organizations, including the American Economic Association, the American Finance Association, and the Licensing Executives Society, among others.



## 3 EXPERT OPINIONS

### 3.1 Expectation Damages – Lost IP

9.  One of Plaintiffs' claims of "lost IP" takes the form of a "lost" trademark, GMAX. However, I am unaware of any evidence the Plaintiffs provided that indicates the costs incurred to establish the trademark, nor income associated with the use of the trademark. In fact, the trademark has never been used in the marketplace.[8] As a result, there is no evidence to suggest that the trademark has been tarnished by the alleged wrongdoing.

10.  In addition, I am unaware of any evidence provided that would indicate that the trademark was likely to acquire distinctiveness in the marketplace that would allow for it to define a particular good in the eyes of consumers. In the absence of this evidence, it is inappropriate to consider the trademark "lost" as that implies there is evidence that it would have been a valued trademark but-for the alleged wrongdoing. To assert that it would have been a valued trademark but-for the alleged wrongdoing is purely speculative, however. Moreover, the trademark is not "lost" as the Plaintiffs can still use the trademark in commerce.

11.  The other claim for "lost IP" is a "lost" patent related to the assumed GMAX product.[9] According to the Plaintiffs, the Defendants were supposed to assist in preparing technical specifications for patent documents that the Plaintiffs wanted to file.[10] However, there is no evidence to indicate that these technical specification, assuming that they were necessary for the patent application, would have led to one or more patents alleged to have been lost by the Plaintiffs. There is no evidence as to what the patent application would have covered, i.e., its claims; whether prior art would have prevented the award of the patent; whether a marketable product would have resulted; whether that product would have been successful; and what proportion of that success could be attributed to the alleged lost patent. To claim that a patent was lost due to the wrongdoing is speculative and to attribute a value to this "lost patent" is even more speculative.

---

[8] While the Plaintiffs had applied for a trademark with the USPTO, a registered trademark was never granted because the trademark, GMAX, was never used in commerce. (See Trademark Status & Document Retrieval (GMAX) http://tsdr.uspto.gov/#caseNumber=85047489&caseType=SERIAL_NO&searchType=statusSearch).
[9] It is my understanding that there was no GMAX product ever introduced.
[10] Third Amended Complaint at Law, 9/15/15, p. 11.

 Charles River Associates

12.     As a result, since there is no evidence of which I am aware to support either claim of "lost IP", attributing "expectation damages" associated with either form of "lost IP" would be speculative. However, to the extent that the Plaintiffs put forth testimony, expert or otherwise, or direct me to information in the record of which I am as of yet unaware, regarding damages associated with this "lost IP", I reserve the right to review and critically evaluate these damages claims.

### 3.2     Consequential Damages

13.     In the Plaintiffs' computation of damages, "consequential damages" were neither defined nor quantified. Moreover, I have not seen any evidence that indicates the Plaintiffs lost sales due to the alleged wrongdoing or that the Defendants gained sales due to the alleged wrongdoing. Simply assuming by virtue of the fact that there were contracts between the Plaintiffs and Defendants to develop enterprise e-commerce platforms and technology and to provide search engine optimization, Internet marketing, and social media marketing that these efforts would lead to marketable products is speculative. Even more speculative is the notion that the sales of these assumed products can be quantified with a reasonable degree of precision without relevant financial and market information.

14.     As a result, since there is no evidence of which I am aware to support a claim of "consequential damages", the quantification of such damages would be speculative. However, to the extent that the Plaintiffs put forth testimony, expert or otherwise, or direct me to information in the record of which I am as of yet unaware, regarding "consequential damages", I reserve the right to review and critically evaluate these damages claims.



Respectfully submitted:

Jeffery A. Stec, Ph.D.

Vice President

Charles River Associates

September 12, 2016



# Exhibit 1



## JEFFERY A. STEC
Vice President

Ph.D. Economics,
The Ohio State University

M.A. Economics,
The Ohio State University

B.A. Economics,
The University of
Illinois-Chicago

B.A. Psychology and
Philosophy,
Cornell University

As a Vice President of Charles River Associates, Dr. Stec has worked with clients in the areas of antitrust, finance, intellectual property, and survey research, both as a consulting expert and as an expert witness. His engagements typically involve the application of economic, financial, statistical, and survey research theory to the collection and analysis of data to evaluate the economic impact of decisions made by consumers and firms.

In the area of intellectual property, Dr. Stec has conducted economic and econometric analyses to determine the value of intellectual property as well as the amount of economic damages resulting from patent, trademark, trade secret, or copyright infringement. He has evaluated economic issues in the context of Section 337 investigations conducted by the U.S. International Trade Commission. He has evaluated issues of secondary meaning, genericness, and likelihood of confusion in the context of trademarks and trade dress. Dr. Stec has also determined economic damages that resulted from false advertising and counterfeit claims.

In the area of survey research, Dr. Stec has both created and critically evaluated surveys in the context of antitrust and intellectual property engagements. He has developed complex sample designs, designed survey questionnaires, and collected and analyzed survey data, including the derivation of complex variance estimates using simulation methods. He has used survey methods to investigate the product attributes that consumers evaluate when making choices among product alternatives. Dr. Stec has also consulted on best survey practices for the design, collection, and analysis of survey data.

In the area of antitrust, Dr. Stec has used economic and econometric analyses to investigate issues related to market definition, determination of market power or market dominance, and the effect of anticompetitive acts on competition. Some of these investigations include the effects of anticompetitive acts in the context of Sherman, Clayton, and Robinson-Patman Act claims dealing with abuse of market power as well as the use of various horizontal and vertical restraints, like price fixing, price discrimination, refusals to deal, exclusive dealing arrangements, and tying, on individual firms or members of a class.

In the area of finance, Dr. Stec has used financial theory and econometrics to conduct analyses to determine asset values and shareholder loss in the context of securities fraud and late trading claims.  These analyses have included the use of various loss causation and event study paradigms as well as trading simulation studies.  Dr. Stec has examined claims of financial lending discrimination, which included investigations of the likelihood of discrimination and the potential damages caused by that discrimination.  Dr. Stec has also used financial theory to determine damages in commercial contract disputes and product liability litigation.

Engagements Dr. Stec has worked on have dealt with the semiconductor and semiconductor design, computer software and hardware, pharmaceuticals, telecommunications, handheld mobile devices, paper products, casino gaming, consumer appliances, automated pharmacy systems, consumer electronics, heavy haul truck trailers, textile machine, precious stones, fashion apparel and luxury accessories, outdoor lighting, vehicle parts, medical products, hardware, product packaging, toys, plastics, pallet, television ratings, financial securities and loans, alcohol, tobacco, sugar, sweetener, and tradeshow industries, among others.

Prior to joining Charles River Associates, Dr. Stec had been engaged in economic and survey research and consulting.  He has analyzed the credit card industry in detail, including co-authoring monthly state and national surveys to gauge consumers' credit card and overall indebtedness.  He also helped to design numerous telephone, mail, and internet surveys for various clients.  His responsibilities included everything from sample and questionnaire design to data collection methods and statistical analyses of survey data.  He has performed econometric studies and written on various economic and survey research topics such as, optimal forecasting methods using time-series data, the effects of unit nonresponse on survey data, efficient methods for conducting telephone surveys, and methods for gauging the degree of consumer indebtedness using original survey data.

Dr. Stec has presented his research at the annual meetings of the American Statistical Association, the American Association of Public Opinion Research, the Midwest Association of Public Opinion Research, the Ohio Association of Economists and Political Scientists, the Midwest Macroeconomics Association, and the Columbus Association of Business Economists. He has also published his work in the American Statistical Association's Proceedings of the Section on Survey Research Methods and Proceedings of the Section on Government Statistics and Section on Social Statistics.  Dr. Stec also contributed and served as a member of the advisory board for the *Encyclopedia of Survey Research Methods*.  He has also written the chapter on the use of surveys in litigation published in the *Litigation Services Handbook*.

## SELECTED EXPERIENCE

### Intellectual Property

Developed economic models to determine damages due to infringement of patents held by a large paper products company. Included a determination of the damages due to the plaintiff's loss of distribution for its patented products due to the infringement of the defendant. Developed a lost distribution model to quantify the amount of distribution lost and the value of that distribution in terms of lost sales to the plaintiff. Additionally, it included the development of a lost profits, market share based model that quantified the lost profits due to lost customers' sales.

Provided expert testimony in a patent infringement litigation in the plastic product manufacturing industry. Determined the percentage of accused products that infringed a number of patents by developing and conducting a multi-stage probability sample of the relevant plastic packaged products. Responsibilities included sample design, overseeing data collection, and data analysis using advanced statistical methods.

Developed economic models to determine damages suffered by a manufacturer of pharmaceutical products as a result of infringement of a number of patents. Studied the market for the patented product, evaluated the substitutability of potentially competing products, and determined sales and profits lost by the patent holder. Constructed and queried a large product database to determine which products infringed which of the many patents-in-suit. Developed analyses of a reasonable royalty under a hypothetical licensing agreement and the effect of the infringing product on the price in the marketplace. Evaluated an econometric market expansion theory proposed by the counterparty.

Developed economic models to determine damages suffered by a manufacturer of semiconductor devices as a result of a competitor's infringement of numerous patents. Determined the profits the plaintiff lost due to price erosion and a determination of reasonable royalties on infringing sales. Constructed a sophisticated econometric model using a large dataset of sales, prices, and other variables that estimated the price elasticity of demand for the relevant product and geographic markets.

Provided expert testimony in a trademark infringement litigation in the children's toy industry. Determined whether survey data were appropriately collected and analyzed in the evaluation of secondary meaning to a mark. Evaluated the survey methodology used by the counterparty to determine whether secondary meaning had accrued to the mark.

Constructed and queried a large proprietary database of regional oil and gas prices to determine differences in branded and generic prices for the purposes of determining the value of a gasoline trademark. Included filtering of the database to examine price differences for various grades of gasoline, various regions of operation, and various time periods.

Provided expert testimony in a trademark infringement litigation in the wine industry. Determined whether survey data were appropriately collected and analyzed in the context of likelihood of confusion between two marks. Evaluated the survey methodology used by the counterparty to determine whether there was survey evidence of the likelihood of confusion between the marks.

Developed economic models to determine damages suffered by a manufacturer of coronary medical devices as a result of a competitor's infringement of numerous patents. Developed lost profits and reasonable royalty models addressing issues such as market definition, product pricing in the absence of infringement, market size and competitors' market share in the absence of infringement, and determination of incremental costs. Developed sophisticated econometric models to address these issues.

Provided expert testimony in a theft of trade secrets in the investor relations services and technology industry. Determined expected client longevity in the absence of the theft of trade secrets taking into account client-specific characteristics using multivariate statistical models that also accounted for the censored nature of the underlying data. Developed damages models using the expected client longevity and the actual client longevity to determine the impact of the alleged theft of trade secrets.

Developed economic models to determine damages suffered by a consumer goods manufacturer as a result of counterfeit sales being made by various retailers. Determined the profits the plaintiff lost due to price erosion in the relevant product and geographic markets. Developed econometric models to determine the price elasticity of demand for the impacted consumer goods.

Developed economic models to determine damages suffered by inventors of children's consumer products as a result of infringement of a number of patents. Evaluated the product and geographic markets for the patented product; valued the patented technology, including the determination of the impact of the use of the patented technology on the infringer's sales and profits and the costs to design around the infringed technology; and determined the impact various other factors would have on the royalty rate that might be negotiated by both parties.

Developed economic models to determine damages suffered by a manufacturer of gene sequencing and analysis products as a result of infringement of a number of patents. Studied the markets for the patented product, evaluated the substitutability of potentially competing products made by various manufacturers, and valued the patented technology from both parties perspectives. Constructed and queried a large product database to determine which products infringed which patents-in-suit and the revenues associated with those products.

Provided expert testimony in a patent infringement matter related to antitrust counterclaims in the centralized hospital pharmacy automation systems market. Conducted analyses to determine the relevant product and geographic markets. Evaluated whether the counterparty had market power in the relevant markets. Examined alleged anticompetitive acts to determine the economic impact of these acts. Determined economic damages these anticompetitive acts had on the claimant.

Provided expert testimony in a trademark infringement litigation in the low-bed, heavy haul trailer industry. Designed sampling approach and survey instrument used to collect data. Analyzed data collected from the survey in the context of whether secondary meaning could be attached to the trademark at issue.

Provided expert testimony in a trademark infringement litigation in the clothing fashion industry. Evaluated the market definition methodology used by the opposing expert and determined the appropriate definition of the relevant market. Evaluated the survey methodology used by the counterparty to determine whether there was survey evidence of the likelihood of confusion between the marks. Determined whether survey data were appropriately collected and analyzed to determine the likelihood of confusion. Evaluated whether damages occurred to the defendant due to the likelihood of reverse confusion.

Developed economic analyses to determine the appropriate royalty rate for a compulsory license which would give the infringing party the ability to continue to make and sell medical devices after a jury found infringement. Examined the patented technology's benefits to the infringer and the maximum it would be willing to pay for its use. Examined the benefits of the patented technology to the infringed party and the minimum it would be willing to accept for its use.

Provided expert testimony in a trademark infringement litigation in the antibiotic ointment industry. Evaluated the survey methodology used by the counterparty to determine whether there was survey evidence that secondary meaning had been established for the trademark. Determined whether survey data were appropriately collected and analyzed to determine secondary meaning. Evaluated the appropriateness of using the survey data collected for the purposes of determining whether dilution to the trademark had occurred.

Developed economic models to determine damages suffered by a manufacturer of outdoor security lighting products as a result of patent infringement. Defined the markets for the patented product and the relevant substitutes for that product. Established the likelihood that lost sales due to the counterparty's infringement of the patent. Determined the value of the patented technology to both parties in generating product sales.

Provided expert testimony in a patent infringement litigation in the handheld mobile computing devices industry for the purposes of a preliminary injunction. Defined the relevant market for the alleged infringing products. Determined the competitive effect that the accused products would have on the counterparty's sales and product prices. Evaluated the likelihood that the plaintiff would be irreparable harmed by the alleged patent infringement. Evaluated the counterparty's opinions as to the effects on its sales and prices of the alleged infringement.

Conducted survey research in a trademark infringement litigation in the student information systems software industry. Designed the survey questionnaire and sampling approach used to collect data. Analyzed data collected from the survey in the context of whether secondary meaning could be attached to the trademark at issue.

Provided expert testimony in a patent infringement litigation in the hydraulic disc bicycle brake industry. Conducted analyses to determine the relevant market. Evaluated claims of lost profits, price erosion, and reasonable royalties. Developed analyses to determine demand for the patented feature of the products as well as economic damages due to patent infringement.

Provided expert testimony in a patent infringement litigation in the medical products industry. Evaluated the product market for the patented product to determine demand for and the value of the patented technology. Determined the costs to design around the infringed technology and determined the impact various other factors would have on the royalty rate that might be negotiated by both parties.

Provided expert testimony in a copyright infringement litigation in the software industry. Determined the relevant market in which the software was used. Developed analyses to determine the foregone profits due to the illegal use of the copyrighted software as well as the unjust enrichment for that use.

Developed economic and survey research analyses to evaluate damages claims associated with alleged violations of the Lanham Act concerning false advertising in clothes dryer industry. Evaluated whether the alleged false advertising had an adverse impact on the sales and prices of the counterparty's clothes dryers. Evaluated whether the alleged false advertising had a favorable impact on the accused party's clothes dryers.

Provided expert testimony in a patent infringement litigation in the farm machinery industry. Oversaw the sampling and collection of data from the use of the alleged infringing machines as well as non-infringing alternatives. Conducted advanced statistical tests to determine whether various configurations of the farm machinery produced statistical different measures of performance. Evaluated the statistical methodology used by the counterparty's expert.

Provided expert testimony in patent infringement matter in the medical products industry. Studied the markets for the patented product and evaluated the substitutability of potentially competing products made by various manufacturers to determine the relevant market. Developed economic models to value the patented technology from both parties perspectives in order to determine damages suffered by the plaintiff. Evaluated the opposing expert's damages opinions attributed to the counterparty's alleged infringement.

Conducted industry research and developed economic models to determine the value of a portfolio of patents in the gene sequencing industry. Provided information on the possible ways in which the patents could be monetized to provide value to the client.

Provided expert testimony in a patent infringement litigation in the compact digital camera industry. Evaluated the survey methodology used by the counterparty's expert to determine the value of the patented features in the accused products. Determined whether the survey and sampling design were appropriately constructed. Examined whether the survey data were appropriately collected and analyzed to determine the value of the patented features.

Conducted survey research in a copyright infringement litigation in the outdoor wind sculpture industry. Designed the survey questionnaire and sampling approach used to collect data. Analyzed data collected from the survey to evaluate whether the protected work and the accused work were substantially similar from the viewpoint of an ordinary observer.

Provided expert testimony in a patent infringement investigation in the video analytics software industry. Evaluated the counterparty's claims regarding the economic prong of the domestic industry requirement. Determined the amount of the bond associated with the Presidential review period.

Provided expert testimony in a patent infringement investigation in the vehicle windshield wiper blade industry. Analyzed financial and industry information to evaluate whether a domestic industry had been established by the Complainant. Conducted analyses to evaluate the appropriateness of an exclusion order, cease-and-desist order, and the appropriate amount of the bond associated with the Presidential review period. Evaluated the counterparty's claims regarding the economic prong of the domestic industry requirement.

Conducted survey research in a trademark infringement litigation in the retirement home industry. Designed the survey questionnaire and sampling approach used to collect data. Analyzed data collected from the survey in the context of whether there was the likelihood of confusion between the trademarks at issue.

Developed economic analyses to determine whether there was evidence of commercial success for a pharmaceutical product in its relevant market. Examined the financial information for the pharmaceutical product as well as discounted profitability of the product relative to the investments undertaken to bring the product to market. Evaluated the counterparty's claims regarding commercial success.

Conducted survey research in a trademark infringement litigation in the coffee maker industry. Designed sampling approach and survey instrument used to collect data. Analyzed data collected from the survey in the context of whether secondary meaning could be attached to the trademark at issue.

Conducted industry research, evaluated economic models, and developed licensing strategy to assist the valuation and licensing of patented technology and trade secrets in the steel-making industry. Provided information on the possible ways in which the technology could be licensed and provided strategic advice on how to set up the licensing agreement.

Developed economic analyses to determine whether there was evidence of commercial success for a pharmaceutical product in its relevant market. Determined the relevant market for the product. Examined the financial information for the pharmaceutical product as well as the market presence of the product. Accounted for relevant macroeconomic, industry, and company-specific factors in examining the pharmaceutical product's performance.

Provided expert testimony in a patent infringement litigation in the commercial bakery tray industry. Conducted analyses to determine the relevant market. Determined economic damages due to lost profits on lost sales, price erosion, and reasonable royalties.

Provided expert testimony in a patent infringement investigation in the smartphone, tablet, and other wireless devices industries. Analyzed the relevant markets to evaluate whether harm to public interest was likely to occur if the Commission was to grant the Complainant an exclusion order. Evaluated the counterparties' claims regarding potential harm to public interest under the proposed exclusion order.

Provided expert testimony in a trademark infringement litigation in the tool industry. Evaluated the survey methodology used by the counterparty to determine whether there was survey evidence of secondary meaning related to the trade dress of the tools. Also evaluated whether there was a likelihood of confusion in the marketplace between the asserted trade dress and the accused trade dress.

Conducted survey research in a trademark and trade dress infringement litigation in the office supplies industry. Designed sampling approach and survey instrument used to collect data. Analyzed data collected from the survey in the context of whether there was a likelihood of confusion in the marketplace between the protected trademark and trade dress and the accused trademark and trade dress.

Provided expert testimony in patent infringement litigations in the software industry. Designed sampling approach and survey instrument used to collect data. Analyzed data collected from the survey in the context of the usage, importance, and purchasing drivers of various software features. Evaluated the counterparty's claims regarding various software features.

Provided expert testimony in a trademark infringement litigation in the vegetable produce industry. Evaluated the survey methodology used by the counterparty to determine whether there was survey evidence of a likelihood of confusion between the asserted trademark and the accused trademark. Determined whether survey data were appropriately collected and analyzed to determine likelihood of confusion.

Conducted survey research in a patent infringement litigation in the smartphone, tablet, MP3 player, and computer industries. Designed sampling approach, experimental design, and survey instrument used to collect data. Analyzed data collected from the survey in the context of the usage, importance, and willingness to pay for various product features.

Provided expert testimony in a patent infringement litigation in the medical products industry for the purposes of a preliminary injunction. Defined the relevant market for the alleged infringing products. Determined the competitive effect that the accused products would have on the counterparty's sales and product prices. Evaluated potential damages claims and the defendant's ability to pay these claims. Evaluated the likelihood that the plaintiff would be irreparable harmed by the alleged patent infringement. Evaluated the counterparty's opinions as to the effects on its sales and prices of the alleged infringement.

Provided expert testimony in a patent infringement litigation in the smartphone industry. Evaluated the survey methodology used by the counterparty to determine the usage of, importance of, and willingness to pay for the alleged patented smartphone features.

Provided expert testimony in a patent infringement arbitration in the smartphone industry. Conducted economic analyses to determine the appropriate balancing royalty payment for a cross license to each party's respective patent portfolios, which included patents, divested patents, and standard essential patents. Evaluated the counterparty's opinions as to balancing royalty payment.

Conducted survey research in a trade dress matter in the clothing industry. Designed sampling approach and survey instrument used to collect data. Analyzed data collected from the survey in the context of whether there was secondary meaning associated with the asserted trade dress.

Provided expert testimony in a patent infringement litigation in the disposable training pants industry. Evaluated the counterparty's survey research in the context of the usage, importance, and willingness to pay for various product features. Evaluated the counterparty's damages claim as it related to the use of the counterparty's survey evidence.

Provided expert testimony in a trademark infringement investigation in the shoe industry. Evaluated the survey methodology used by the counterparty to determine whether there was a likelihood of confusion in the marketplace between the asserted trade dress and the accused trade dress.

Developed survey research analyses in a patent infringement litigation in the tablet and e-reader industry. Determined the relevant market for the product. Examined the financial information for the pharmaceutical product as well as the market presence of the product. Accounted for relevant macroeconomic, industry, and company-specific factors in examining the pharmaceutical product's performance.

## Antitrust

Developed economic analyses addressing liability and damage issues in a litigation involving claims of Robinson-Patman antitrust violations. Analyzed the economic impact of alleged price discrimination on the sales of the plaintiff using a very large database of sales transactions on a weekly basis for every cigarette retailer in the continental U.S. over a seven year period. Developed sophisticated econometric models to quantify the amount of the economic impact. Reviewed financial and sales records to assess the impact on profits of alleged lost sales due to pricing decisions based on the higher costs.

Prepared economics analyses pertaining to the market structure, conduct, and performance for the rapid prototyping machine market. Conducted an economic analysis to determine the appropriate antitrust market. Determined the amount of market power that certain market participants had in the marketplace. Determined the effects to competition in the defined market of anticompetitive acts committed by the counterparty.

Provided expert testimony relating to the processed sugar industry which addressed whether events in that industry could have led to lost business opportunities for a firm in that industry. Conducted economic analyses to determine the appropriate market for the products at issue. Examined events in the industry and conducted industry research to determine the effects of industry events on business opportunities for that firm.

Developed economic analyses and conducted economic research to determine whether a large semiconductor manufacturer had a position of dominance in the relevant market for microprocessors. Analyzed the demand-side and supply-side substitution possibilities in the context of the determination of the relevant market. Analyzed innovation and competition in the industry to address the issue of dominance.

Developed analyses to address issues of class certification in a litigation dealing with claims of anticompetitive conduct in the wooden pallet industry. Addressed plaintiffs' proposed survey research, used to estimate damages, by examining their survey methodology using a total survey error approach.

## General Consulting and Litigation

Evaluated the damages suffered by a domestic manufacturer of orthopedic products as a result of a breach of best efforts clause by one of its foreign distributors. Reviewed financial and market data to gauge the performance of the distributor. Determined the revenues and profits lost by the manufacturer due to the distributor's failure to use its best efforts. Included an analysis of the value of returned inventory by the distributor to the manufacturer.

Evaluated the damages suffered by a domestic manufacturer of orthopedic products as a result of a breach of its contract with one of its domestic distributors. Reviewed financial and market data to gauge the performance of the distributor. Evaluated the use of mortality tables in the context of the plaintiff's expert report. Developed sophisticated NPV models that determined the revenues and profits lost by the distributor due to the breach of contract.

Provided consulting expertise to assist a large data collection and media ratings company in best practices improvements regarding its telephone survey operations. Conducted research into its current methods for conducting telephone surveys, including analyses of large databases of calling records and outcomes. Developed multivariate statistical models to better forecast calling outcomes and researched improved calling rules to enhance performance.

Provided expert testimony in a breach of contract litigation in which economic analyses were used to determine the loss of members and members' purchases suffered by a large hardware cooperative due to the breach of contract by a large accounting firm. Using large data sets provided by the coop, developed econometric analyses that gauged the economic impact of a large financial loss suffered by the cooperative due to the breach of contract while accounting for unrelated events surrounding the announcement of the loss.

Provided expert testimony in a breach of contract litigation related to software usage and the payment of royalties. Developed analyses that determined the number of licenses for which a software company was not paid a royalty for the use of the licenses. Evaluated the survey data and survey methodology used by the counterparty to determine the extent to which an embedded software program included in a larger software package was invoked.

Provided expert testimony in a breach of contract litigation related to product failure and the loss of business in the auto parts industry. Developed economic analyses to define properly the relevant market, estimate market size, and determine other factors that impacted the plaintiff's business. Evaluated the counterparty's use of product diffusion models to quantify damages due to lost business.

Provided consulting expertise to assist a large data collection and media ratings company in best practices improvements regarding its telephone survey operations. Conducted research of large databases of calling records and outcomes. Developed cost analyses to identify the direct and indirect costs of certain outcomes. Recommended alternative data collection methods and other best practices suggestions to minimize the costs of undesirable outcomes without compromising data quality.

Developed economic analyses to determine damages resulting from a breach of a license agreement between companies in the flat screen television industry. Evaluated counterparty's damages claims of foregone royalties and loss of enterprise value due to the breach.

Provided expert testimony in a litigation related to violations of ballot secrecy in the election of union officials. Developed statistical models to examine voting patterns and voter turnout from the contested elections to evaluate claims that the violation of ballot secrecy impacted election results. Evaluated counterparty's vote reallocation models to determine their reasonableness.

Evaluated the survey conducted by the counterparty's survey expert regarding the product characteristics and specifications that were factors in consumers' purchasing decisions of large, high-end computer servers. Conducted analyses of survey data to determine the importance of certain purchase drivers in the context of consumers' overall decision-making process.

Developed a multi-stage stratified sampling design used to draw samples from a large wholesaler of precious stones for the purposes of valuing the wholesaler's precious stones inventory. Derived formulae for the sample estimates and variances of the sample estimates. Consulted on appropriate sample sizes to obtain desired level of precision for the sample estimates. Programmed the sample design and calculation of sample estimates and variances using statistical software.

Developed economic analyses using multiple, large databases to evaluate competitive relationships between certain trade shows in the trade show industry. Determined whether certain trade shows detracted from the commercial success of other trade shows. Developed a survey and sampling methodology to collect relevant economic data. Developed approaches to determine the amount and degree of competitive overlap across various trade shows.

Provided expert testimony in a litigation related to the alleged devaluation of class members Rewards points due to a change in the customer rewards program. Developed analyses to quantify the economic impact of the program change on class members points. Evaluated the counterparty's damages claims of economic harm due to the breach of the program agreement.

Provided expert testimony in a litigation related to product liability in an automobile accident. Determined the diminished earning capacity of the injured party using economic and financial models to gauge potential lost earnings and benefits. Evaluated counterparty's damages claims and methodology to determine their reasonableness.

Developed economic analyses based on proprietary data, third-party research, and survey data to determine the amount of economic damages attributable to a larger product failure and product recall in the refrigerator industry. Evaluated the counterparty's analyses and damages claims of the economic harm due to the product failure and recall.

Conducted survey research to evaluate movie theater attendance patterns, reasons for going to movie theaters, the relative importance of these reasons in attending movies, and pricing information for movie theater products. Designed the survey questionnaire and sampling approach. Oversaw the data collection of both internet and in-person surveys. Conducted various statistical survey analyses.

Provided expert testimony in a litigation related to an alleged breach of contract in the commercial parking garage industry. Using advanced statistical models, determined the amount of lost garage parkers due to the alleged breach of contract. Evaluated counterparty's lost garage parker claims and methodology to determine their reasonableness.

Evaluated the survey conducted by a large survey research firm regarding farming methods and subsistence in third world countries in the context of a professional malpractice claim. Conducted analyses of survey methodology and survey data to determine whether the survey conformed to survey best practices and whether the survey likely suffered from bias.

Provided expert testimony in a product liability litigation in the fruit industry. Developed a multi-stage stratified sampling design used to select at random samples of fruit trees from the target population. Oversaw and led the collection of samples to be used by technical experts in their analyses. Derived formulae for the sample estimates and variances of the sample estimates. Consulted on appropriate sample sizes to obtain desired level of precision for the sample estimates.

Provided expert testimony in a litigation related to alleged misrepresentations made in violation of the Lanham Act in the security services industry. Evaluated the survey conducted by the counterparty's survey expert regarding the impact of the alleged misrepresentations on current consumers' decisions of which security services to retain. Evaluated counterparty's damages claims and methodology regarding the number of customers lost due to the alleged misrepresentations and the value of those customers' accounts.

## Finance

Reverse engineered and critiqued an expert's 10(b)-5 damages model surrounding the quantification of financial losses by a class of the company's shareholders. Proposed possible adjustments to the model that would provide a more reliable estimate of damages. Developed a large database and the modeled daily stock prices and trader activity for a five year period.

Conducted financial analyses of a trader's trading activity where it was alleged the trader late traded into and out of various mutual funds over approximately a three year period. Constructed a large data base of every S&P futures transaction for approximately a six year period and a large database of all of the trader's trades. Analyzed the trading activity of the trader using these databases. Developed econometric models based on this analysis to determine to what extent, if any, the trader late traded. Evaluated the econometric models provide by the counterparty alleging late trading.

Conducted and consulted on analyses of traders' and mutual employees trading activities in which simulation of trading activity was done following pre-specified trading rules to determine the total next-day net NAV return and the amount of dilution for trading within a given mutual fund. Analyzed and consulted on the comparison of simulation based on these pre-specified trading rules to litigants' trading activities as well as to baseline simulations where next-day net NAV return and the amount of dilution was determined from trading done on randomly determined trade days.

Provided expert testimony in a malpractice litigation concerning issues related to a company's reorganization of its debts. Conducted and evaluated various analyses, including event studies, to determine the effect information in the proxy statement for a bond offering, as well as other information available at that time, had on the litigant's bond prices.

Provided expert testimony in a bankruptcy litigation involving the valuation of PCS licenses in the wireless telephone industry. Evaluated econometric models used to value the PCS licenses by the counterparty's expert. Examined factors that impacted license value and determined appropriateness of the valuation models.

Conducted economic analyses to determine the likelihood of lending discrimination by a large finance company in the market for consumer automobile loans. Examined and developed large databases that included financing transactions between the large lender and individual borrowers. Developed sophisticated econometric models to determine whether evidence suggested lending decisions were made on the basis of inappropriate consumer characteristics.

Conducted economic analyses of various reasons for the magnitude and change in personal bankruptcy filings used for credit risk management and marketing analytics in the credit card industry. Developed statistical models based on various economic variables to explain and forecast personal bankruptcy filings. Developed forecasts of underlying primitive variables in the overall forecasting models.

Conducted survey research in a litigation in the private equity fund industry. Designed the survey questionnaire and sampling approach used to collect data. Analyzed data collected from the survey to examine investors' decision-making processes and which characteristics of private equity funds influence investors' decisions.

## REFEREE

Journal of Official Statistics, Public Opinion Quarterly, Survey Methodology

## PUBLICATIONS AND SPEECHES

"How to Design Effective Consumer Surveys for Trademark and False Advertising Cases: Practical Guide." Invited Panelist, The Knowledge Group, WebEx Presentation, July 2016.

"Survey Research in Trademark Cases." Invited Instructor. Illinois Institute of Technology Chicago-Kent College of Law, April 2016.

"False Advertising: Understanding the Legal Issues in 2016." Invited Panelist, The Knowledge Group, WebEx Presentation, March 2016.

"Survey Research in Trademark Cases." Invited Presenter. Pattishall, McAuliffe, Newbury, Hilliard & Geraldson LLP, March 2016.

"The Use of Surveys in Patent Litigations." Invited Presenter. Intellectual Property Organization, Damages and Injunctions Committee, December 2015.

"Current Knowledge and Considerations Regarding Survey Refusals: Executive Summary of the AAPOR Task Force Report on Survey Refusals" with David Dutwin, John D. Loft, Jill E. Darling, Allyson L. Holbrook, Timothy P. Johnson, Ronald E. Langley, Paul J. Lavrakas, Kristen Olson, Emilia Peytcheva, Timothy Triplett, and Andrew Zukerberg. *Public Opinion Quarterly*, Volume 79, Number 2, Summer 2015, pp. 411-419.

"Recent Trends and Developments in Patent and Trademark Damages." Invited Presenter. Corporate Counsel IP Seminar, Nixon Peabody, June 2015.

"Trademark Damages and Survey Research in Patent and Trademark Cases." Invited Presenter. Kenyon & Kenyon, March 2015.

"Future Trends in False Advertising." Invited Panelist, The Knowledge Group, WebEx Presentation, November 2014.

"Survey Research in Litigation" with Paul J. Lavrakas. *Litigation Services Handbook: The Role of the Financial Expert.* Roman L. Weil and Daniel G. Lentz, editors. Fifth Edition 2014 Cumulative Supplement. John Wiley & Sons, Inc. Hoboken, NJ. 2014.

"Current Knowledge and Considerations Regarding Survey Refusals" with David Dutwin, John D. Loft, Timothy Triplett, and Ronald E. Langley. 2014 American Association of Public Opinion Research Conference, Anaheim, CA, May 2014.

"Monetary Relief Under the Lanham Act." Chicago Bar Association, Assessing Damages in Intellectual Property Cases, Chicago, IL, April 2012.

"Flying through Turbulence: Key Take-Aways from Recent Patent Damages Decisions." 2011 Locke Lord IP Damages Summit, Dallas, TX, October, 2011.

"Patent Damages" with Thomas I. Ross. Intellectual Property Law Association of Chicago, Patent Law Symposium 2010, Chicago, IL, October 2010.

*Encyclopedia of Survey Research Methods*, Contributor and Member of Advisory Board, Sage Publications, Thousand Oaks, CA, (2008).

"Price Erosion and Elasticity of Demand: Are the Courts Getting it Right?" *IP Remedies* (American Bar Association), (July 2008).

 "Costs of Refusals in Large RDD National Surveys" with Paul J. Lavrakas. 2007 American Association of Public Opinion Research Conference, Anaheim, CA, May 2007.

"Gaining Efficiencies in Scheduling Callbacks in Large RDD National Surveys" with Paul J. Lavrakas, Charles W. Shuttles, Gail Daily, Tracie Yancey, and Ralph Watkins.

- o 2007 American Association of Public Opinion Research Conference, Anaheim, CA, May 2007.

- o 2006 Telephone Survey Methodology Conference II, Miami, FL, January 2006.

- o 2005 American Association for Public Opinion Research Annual Meeting, Miami, FL, May 2005.

- o 2004 American Statistical Association Annual Meeting, Toronto, Ontario, August 2004.

"An Index to Measure and Track Consumer Debt Conditions" with Lucia F. Dunn and Paul J. Lavrakas, 2000 American Statistical Association Annual Meeting, Indianapolis, IN, August 2000.

"A Debt Stress Index for Measuring the Stress Associated with One's Total Debt", with Paul J. Lavrakas, Lucia F. Dunn, and T.H. Kim, American Statistical Association's *Proceedings of the Section on Government Statistics and Social Statistics Section*, (2000).

"Uses of Survey Data in Tracking Consumer Debt", with Lucia F. Dunn and Paul J. Lavrakas, American Statistical Association's *Proceedings of the Section on Government Statistics and Social Statistics Section*, (2000).

"Investigating Unit Non-response in a RDD Survey", with Paul J. Lavrakas and Elizabeth Stasny, American Statistical Association's *Proceedings of the Section on Survey Research Methods*, (1999).

"Achieving an Optimum Number of Callback Attempts: Cost-Savings vs. Non-response Error Due to Non-contacts in RDD Surveys", with Brian E. Harpuder, American Statistical Association's *Proceedings of the Section on Survey Research Methods*, (1999).

"An Examination of Call Attempts for a RDD Study: The Buckeye State Poll", 1999 Midwest Association for Public Opinion Research Annual Meeting, Chicago, Illinois, November 1999.

"Investigating Unit Non-response in a RDD Survey" with Paul J. Lavrakas and Elizabeth Stasny.

- o 54th Annual Meeting of the American Association for Public Opinion Research, St. Pete's Beach, Florida, May 1999.

- o 1998 Midwest Association for Public Opinion Research Annual Meeting, Chicago, Illinois, November 1998.

"Achieving an Optimum Number of Callback Attempts: Cost-Savings vs. Non-response Error Due to Non-contacts in RDD Surveys", with Brian E. Harpuder.

- o 54th Annual Meeting of the American Association for Public Opinion Research, St. Pete's Beach, Florida, May 1999.

- o 1998 Midwest Association for Public Opinion Research Annual Meeting, Chicago, Illinois, November 1998.

"Some Results from the Buckeye State Poll to Economic and Political Survey Questions" with Trevor N. Tompson, 58th Annual Meeting of the Ohio Association of Economists and Political Scientists, Columbus, Ohio, October 1998.

"Money Demand and the Moderate Quantity Theory of Money" with J. Huston McCulloch, Fall Meeting of the Midwest Macroeconomics Association, Bloomington, Indiana, September 1998.

"Consumer Confidence and Interest Rate Measures Using Survey Data" with Lucia F. Dunn, Meeting of the Columbus Association of Business Economists, Columbus, Ohio, November 1997.

## PROFESSIONAL AFFILIATIONS

| | |
|---|---|
| American Economic Association | American Statistical Association |
| American Finance Association | American Association of Public Opinion Research |
| National Association of Business Economists | Licensing Executives Society |
| Intellectual Property Owners Association | |

# Exhibit 2



# JEFFERY A. STEC
Vice President

## PREVIOUS TESTIMONY

American National Can Company v. Continental PET Technologies, Inc. Case No. B90-558 (EBB), United States District Court – District of Connecticut. Expert Report, Response Expert Report, Deposition Testimony.

Cigarettes Cheaper! v. R.J. Reynolds Tobacco. Case No, 99 C. 1174, United States District Court – Northern District of Illinois, Eastern Division. Declaration.

MKS Software v. Mentor Graphics Corporation. Case No. 02-424-A, United States District Court – Eastern District of Virginia, Alexandria Division. Expert Report.

Peaceable Planet, Inc. v. Ty Inc. and H. Ty Warner. Case No. 01 C 7350, United States District Court – Northern District of Illinois. Declaration.

Finnsugar Bioproducts, Inc. v. The Amalgamated Sugar Company, LLC and Amalgamated Research Inc. Case No. 97 C 8746. United States District Court – Northern District of Illinois, Eastern Division. Rebuttal Expert Report.

BIAX Corporation v. Apple Computer, Inc.; International Business Machines Corporation; and Motorola, Inc. Case No. 01-601-KAJ, United States District Court – District of Delaware. Expert Report, Declaration.

TruServ Corporation v. Ernst & Young. Case No. 51 Y 181 01333 02, American Arbitration Association. Expert Report, Rebuttal Expert Report, Deposition Testimony, Arbitration Testimony.

Smith Wholesale Company, Inc. et al. v. R.J. Reynolds Tobacco. Case No. 2:03-CV-30. United States District Court – Eastern District of Tennessee. Declaration.

JLJ, Inc. et al. v. Santa's Best Craft, et al., Case No. C-3-02-00513. United States District Court – Southern District of Ohio. Rebuttal Expert Report.

Ventas, Inc. v. Sullivan & Cromwell, Civil Action No. 5232-02. Superior Court of the District of Columbia. Expert Statement, Deposition Testimony.

Direct Report Corporation d/b/a Shareholder.com v. CCBN.com, Inc. et al. Civil Action No. 09-10535 PBS. United States District Court – District of Massachusetts. Expert Report.

Leelanau Wine Cellars, Ltd. v. Black & Red, Inc. d/b/a Chateau de Leelanau et al.  Case No. 1:01-CV-319. United States District Court – Western District of Michigan.  Declaration, Deposition Testimony, Trial Testimony by Designation.

Mark A. Freeman and Timothy K. Stringer v. Gerber Products Company.  Case No. 02-2249-JWL.  United States District Court – District of Kansas. Declaration.

Elaine L. Chao, Secretary of Labor, U.S. Department of Labor v. Local 1700, Amalgamated Transit Union.  Case No. 2:05 CV 718 PGC.  United States District Court – District of Utah, Central Division.  Expert Report, Deposition Testimony.

In re: Airadigm Communications, Inc.  Case No. 06-10930.  United States Bankruptcy Court – Western District of Wisconsin.  Rebuttal Expert Report, Deposition Testimony.

Cozad Trailer Sales, LLC v. Rackley Bilt Trailer Sales, Inc. et al.  E.D. Case No. 2:05-cv-01181 WBS DAD. United States District Court – Eastern District of California, Sacramento Division.  Expert Report.

Fendi Adele S.R.L., et al. v. Burlington Coat Factory Warehouse, Inc., et al. Case Nos. 06-CV-0085 (LBS) (MHD); 06-CV-0243 (JES) (MHD); 06-CV-0244 (JES) (MHD); 06-CV-0245 (JES) (MHD); 06-CV-7084 (JGK) (MHD).  United States District Court – Southern District of New York, Declaration.

Lucky Brand Dungarees, Inc. and Liz Claiborne, Inc. v Ally Apparel Resources LLC d/b/a Get Lucky, Key Apparel Resources, Ltd., Marcel Fashion Group, Inc. and Ezra Mizrachi.  Civil Action No. 05 CV 6757-LTS.  United States District Court – Southern District of New York, Rebuttal Expert Report, Deposition Testimony.

Johnson & Johnson and Johnson & Johnson Consumer Companies, Inc. v. Perrigo Company and Perrigo New York, Inc., F/K/A Clay-Park Labs, Inc.  Civil Action No. 1:006-CV-7198 (DLC) (JCF).  United States District Court – Southern District of New York, Rebuttal Expert Report, Declaration, Deposition Testimony.

Jon Synder, Inc. f/d/b/a JBS Technologies v. Matsushita Electric Corporation of America d/b/a Panasonic Telecommunications Systems Company, et al.  Civil Action No. 03 CV 00524.  Court of Common Pleas, Jefferson County, OH.  Rebuttal Expert Report.

McKesson Automation, Inc. v. Swisslog Italia S.P.A. and Translogic Corporation. Case No. 06-028 (KAJ).  United States District Court – District of Delaware.  Expert Report.

Symbol Technologies, Inc. v. Janam Technologies, LLC. Case No. 01:08cv340. United States District Court – District of Delaware. Declaration, Deposition Testimony.

Peter J. Weller *et al.* v. Sprint Communications, L.P.  AAA Reference No. 11 181 00070 06.  Expert Report, Rebuttal Expert Report.

SRAM Corporation v. Formula S.R.L. and Perigeum Development, Inc. d/b/a Formula Brake U.S.A., No. 1:06-CV-1025 and No. 1:07-CV-1565. United States District Court – Northern District of Illinois, Eastern Division. Rebuttal Expert Report, Deposition Testimony.

American Medical Systems, Inc. and Laserscope v. Laser Peripherals, LLC, No. 08-CV-4798 (JNE/FLN). United States District Court – District of Minnesota. Rebuttal Expert Report, Deposition Testimony.

Airframe Systems, Inc. f/k/a Airline Software, Inc., v. Raytheon Company and L-3 Communications Corporation, No. 1:08-cv-11940-WGY. United States District Court – District of Massachusetts. Rebuttal Expert Report.

Justin P. Toronyi *et al.* v. Honeywell International Inc. *et al.*, No. 09 L 14818. Circuit Court of Cook County Illinois County Department – Law Division. Rebuttal Expert Report, Deposition Testimony.

CNH America LLC and Blue Leaf, L.P., Inc. v. Kinze Manufacturing, Inc. No. 08-945-GMS. United States District Court – District of Delaware. Expert Report, Second Expert Report, Deposition Testimony.

W.L. Gore & Associates, Inc., and Gore Enterprise Holdings, Inc. v. Medtronic, Inc., Medtronic USA, Inc., and Medtronic Vascular, Inc. No. 10-cv-04441. Eastern District of Virginia – Norfolk Division. Expert Report, Deposition Testimony, Trial Testimony.

Image Processing Technologies, LLC v. Canon Inc. and Canon U.S.A., Inc. No. 10-cv-03867 (LDW) (ETB). United States District Court – Eastern District of New York. Rebuttal Expert Report, Deposition Testimony.

In the Matter of Certain Video Analytics Software Systems, Components Thereof, and Products Containing Same, United States International Trade Commission, Washington, D.C. Investigation Number 337-TA-795. Expert Report, Deposition Testimony, Expert Witness Statement, Hearing Testimony.

Chicago Loop Parking LLC v. The City of Chicago, No. 51 115 Y 00231 11, American Arbitration Association. Rebuttal Expert Report, Deposition Testimony, Arbitration Testimony.

In the Matter of Certain Wiper Blades. United States International Trade Commission, Washington, D.C. Investigation Number 337-TA-816. Expert Report, Rebuttal Expert Report, Deposition Testimony, Declaration, Expert Witness Statement, Rebuttal Expert Witness Statement.

ADT Security Services, Inc. v. Security One International, Inc. et al. No. 4:11-cv-05149-YGR. United States District Court – Northern District of California Oakland Division. Rebuttal Expert Report, Deposition Testimony, Trial Testimony.

ORBIS Corporation v. Rehrig Pacific Company. No. 12-cv-1073-JPS. United States District Court – Eastern District of Wisconsin Milwaukee Division. Declaration, Expert Report, Deposition Testimony.

Symantec Corporation v. Veeam Software Corporation. No. 3:12-cv-00700 SI. United States District Court – Northern District of California San Jose Division.  Expert Report, Declaration.

In the Matter of Certain Wireless Devices with 3G and/or 4G Capabilities and Components Thereof. United States International Trade Commission, Washington, D.C. Investigation Number 337-TA-868.  Expert Report, Deposition Testimony, Expert Witness Statement, Rebuttal Expert Witness Statement, Hearing Testimony.

Symantec Corporation v. Acronis, Inc. et al. No. 3:11-cv-05310 EMC. United States District Court – Northern District of California San Francisco Division.  Expert Report, Deposition Testimony.

Administradora de Citricos de Costa Rica S.A., et al. v. E.I. Du Pont De Nemours & Company, Inc. No. 01-6935-CA.  Circuit Court of the 11th Judicial Circuit in and for Miami Dade County, Florida. Expert Report, Deposition Testimony, Trial Testimony.

NatureSweet, Ltd. v. Mastronardi Produce Ltd., Mastronardi Produce-USA, Inc., and Worldwide Plastics Co.  No. 03-12-CV-1424-G-BD. United States District Court – Northern District of Texas Dallas Division.  Rebuttal Expert Report, Deposition Testimony.

Symantec Corporation v. Acronis, Inc. et al. No. 3:12-cv-05331 JST. United States District Court – Northern District of California San Francisco Division.  Expert Report, Deposition Testimony.

The Black & Decker Corporation et al. v. Positec USA, Inc. et al.  No. 1:11-cv-05426.  United States District Court – Northern District of Illinois Eastern Division.  Rebuttal Expert Report, Deposition Testimony.

Dish Network, LLC v. Fun Dish, Inc. et al.  No. 1:08-cv-01540.  District Court – Northern District of Ohio Eastern Division.  Rebuttal Expert Report, Declaration, Deposition Testimony.

Dentsply International Inc. v. US Endodontics, LLC.  No. 2:14-cv-00196.  United States District Court – Eastern District of Tennessee.  Declaration, Expert Report, Deposition Testimony, Hearing Testimony.

In the Matter of Certain 3G Mobile Handsets and Components. United States International Trade Commission, Washington, D.C. Investigation Number 337-TA-613.  Expert Report, Rebuttal Expert Report, Deposition Testimony, Expert Witness Statement, Rebuttal Expert Witness Statement, Hearing Testimony.

DataQuill Limited v. ZTE Corporation et al. No. 2:13-cv-634.  United States District Court – Eastern District of Texas – Marshall Division.  Expert Report, Trial Testimony.

Samsung Electronics Co., Ltd. (Korea) v. Nokia Corporation (Finland).  International Chamber of Commerce.  ICC Case No. 19602/AGF/RD (c. 19638/AGF). Rebuttal Expert Report, Arbitration Testimony.

Select Comfort Corporation v. Tempur Sealy International, Inc., d/b/a Tempur-Pedic et al. No. 13-cv-02451 (DWF/SER). United States District Court – District of Minnesota. Rebuttal Expert Report, Deposition Testimony.

In the Matter of Certain Footwear Products. United States International Trade Commission, Washington, D.C. Investigation Number 337-TA-936. Rebuttal Expert Report, Deposition Testimony, Rebuttal Witness Statement, Trial Testimony by Designation.

Parallel Networks Licensing, LLC v. Microsoft Corporation. No. 13-2073-SLR. United States District Court – District of Delaware. Rebuttal Expert Report, Deposition Testimony.

Kimberly-Clark Worldwide, Inc. and Kimberly-Clark Global Sales, LLC. v. First Quality Baby Products, LLC and First Quality Retail Services, LLC, and First Quality Consumer Products, LLC. No. 1:14-cv-01466-WCG. United States District Court – Eastern District of Wisconsin – Green Bay. Rebuttal Expert Report.

Barn Light Electric Company, L.L.C v. Barnlight Originals, Inc., Hi-Lite Manufacturing Company, Inc., and Jeffrey L. Ohai. No. 8:14-cv-1955-T-35AEP. United States District Court – Middle District of Florida. Expert Report, Deposition Testimony.

Intellectual Ventures I LLC and Intellectual Ventures II LLC v. Canon Inc. and Canon U.S.A., Inc. No. 11-cv-792-SLR. United States District Court – District of Delaware. Expert Report, Deposition Testimony.

Ferring B.V. v. Perrigo Company, Perrigo Company PLC, Perrigo Company of Tennessee, Perrigo New York Inc., and Fera Pharmaceuticals, LLC. No. 2:14-cv-01653. United States District Court – Eastern District of New York. Expert Report.

Signal IP, Inc. v. American Honda Motor Co., Inc. and Honda of America Mfg., Inc. No. 2:14-cv-2454. United States District Court – Central District of California. Rebuttal Expert Report, Deposition Testimony.

Ferring Pharmaceuticals, Inc. v. Braintree Laboratories, Inc. No. 13-cv-12553. United States District Court – District of Massachusetts. Expert Report, Rebuttal Expert Report, Deposition Testimony, Declaration.

Avid Technology, Inc. v. Media Gobbler, Inc. No. 1:14-cv-13746 PBS. United States District Court – District of Massachusetts. Rebuttal Expert Report, Deposition Testimony.

Exhibit 3

*Linkepic Inc., et al. v. Vyasil, LLC et al.*

Exhibit 3.0
**Documents and Information Reviewed and/or Relied Upon**

### Documents

GMAX_v11_Updated_1__-_Justin_London-3 Operating Model.pdf
GMAX_v11_Updated_1__-_Justin_London-3 Analysis.pdf
Response to Motion to Dismiss Opposition.pdf
Applicant GMAX.pdf
GMAX Trademark Allowance.pdf
GMAX Trademark Opposition.pdf
GMAX Trademark.pdf
Letter About Registration of GMAX.pdf

### Legal Filings

Third Amended Complaint at Law, 9/15/15
Plaintiffs' Objections and Answers to Defendants Interrogatories to Plaintiffs, 2/26/16
Plaintiffs' Third Supplemental Rule 26(a) Disclosures
Defendants Wittstrom and Tannenhill's Answer to Third Amended Complaint at Law, 12/17/15
Defendants Wittstrom and Tannenhill's Amended Affirmative Defenses, 7/8/16

### Publicly Available Documents

Trademark Status & Document Retrieval (GMAX) http://tsdr.uspto.gov/#caseNumber=85047489&caseType=SERIAL_NO&searchType=statusSearch