UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| VEOXO, INC., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 12 cv 9058 |
| | ) | |
| v. | ) | Honorable Judge Edmond E. Chang |
| | ) | |
| VYASIL, LLC et al., | ) | Honorable Magistrate Judge Maria Valdez |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' RESPONSE TO**
**PLAINTIFF'S MOTIONS IN LIMINE (JURY TRIAL)**

Defendants Karl Wittstrom and Ryan Tannehill, by their attorneys, respectfully submit their response to plaintiff Justin London's motions in limine Nos. 2, 3, 6, 7, 9, 10, 14, 15, 16, 20, 21, 22, 25, 26 & 27:[1]

**Nos. 2 & 25 – Other Litigation Involving Plaintiffs.** London has moved to bar evidence and argument regarding other lawsuits in which he or the corporate plaintiffs have been involved. He did not identify any particular lawsuits that he believes objectionable. However, defendants are aware of a lawsuit from this District in which London sued a software development company for failure to create a website for Veoxo, one of the corporate plaintiffs in this suit. *See London v. Affinity Internet, Inc.*, 07-3229 (N.D. Ill.) (Dow, J.) ("*Affinity*"). Like this lawsuit, in *Affinity* London sought tens of millions in damages based on a contract price of less than $20,000. *See* Dkt. 45. In *Affinity*, defendants filed a motion to dismiss the lawsuit as a sanction against London for falsifying evidence. The lawsuit was settled shortly thereafter. *See* Dkt. Nos. 83-104.

---

[1] Defendants do not object to motions in limine No. 1 (witnesses that do not testify in person); No. 5 (available witnesses did not testify); No. 8 (exclude non-party witnesses from courtroom); No. 13 (previously dismissed claims); No. 17 (religious beliefs); and No. 19 (personal health matters).

The evidence relating to London's dealings with the defendant in *Affinity* are relevant to London's charge that he was "defrauded" in connection with software services that Vyasil was to provide. The evidence shows that London had experience dealing with software development companies before Vyasil, that he was aware that there could be challenges in developing software to specifications, that it would have been unreasonable for London to pay invoices without seeing deliverables, and London's own conduct caused or increased his damages. Thus, the evidence from the *Affinity* lawsuit is probative on several elements of his claims, including London's reliance on defendants' alleged misrepresentations.

Furthermore, there is little risk that the jury will be "confused" about anything. Vyasil's work related to Veoxo is not at issue in the jury trial (and even in the bench trial, the claim is limited to SEO, not website development). Thus, there will be little risk that the jury will somehow confuse the two lawsuits. In any event, to avoid any confusion, the Court could instruct the jury (or elicit testimony) that the company or software development at issue in *Affinity* is not at issue at the jury trial.

Finally, evidence regarding this other lawsuit is admissible under Fed. R. Evid. 404(b) to show London's motive and plan of suing companies with which he has done business to try to leverage more value through litigation than performance of the contract would have provided.

**Nos. 3 & 16 – Education.** London has moved to bar evidence of his education "for the purpose of establishing that he is too educated or has to many degrees to be defrauded or deceived." London has several advanced degrees, including a law degree and degrees in computer science. London's reliance is one of the most important issues in this case, and his education—particularly in computer science—goes to the heart of whether it was reasonable for him to rely on the allegedly fraudulent statements. Indeed, it would be unfairly prejudicial to

defendants if they were unable to present evidence of London's education or argue that he had knowledge that would have precluded reasonable reliance on any alleged misrepresentations.

**No. 6 – Witness Credibility.** London seeks to bar defendants "from improperly asking a witness to comment on the credibility of testimony given by a different witness." London has only cited criminal law for this motion, and courts have refused to grant similar requests in the civil context when it comes to the credibility of witnesses generally. *See Woods v. Amazon.com, LLC*, No. 17 C 4339, 2019 WL 2323874, at *3 (N.D. Ill. May 30, 2019) ("Amazon and Duke argue that the Court should bar Woods from presenting any evidence or commentary about the credibility of Defendants, Defendants' employees, or Defendants' witnesses. . . . There is no basis here to bar all questions or commentary about a witness' credibility, and, as a result, Amazon's and Duke's MILs are denied."). Given that London has accused defendants of being dishonest and having made false representations, they should be permitted to rebut that charge with opinion or reputation testimony about their character for truthfulness. *See* Fed. R. Evid. 608(a) ("A witness's credibility may be . . . supported by testimony about the witness's reputation for having a character for truthfulness . . . , or by testimony in the form of an opinion about that character.").

**Nos. 7 & 20 – Settlement Discussions.** Defendants have no objection to this request so long as they are allowed to present evidence and argument of London's settlement with Hemang Vyas, which should be used as a set-off to any damages sought against the defendants.

**No. 9 – Financial Hardship.** London seeks to bar evidence or argument that defendants will suffer financial hardship if London is awarded damages, including punitive damages. Should the Court decide the evidence warrants an instruction on punitive damages, the very nature of a punitive award is to punish a wrongful party. The amount of a punitive award, and its

impact on a defendant, are facts that can be taken into consideration in assessing an appropriate size of an award. The financial hardship to defendants is one such fact that can be considered.

**No. 10 – Lawsuits Against Witnesses.** London seeks to bar "mention that any witness or expert witness has or has not had other claims or lawsuits brought against them." It is not clear what evidence London seeks to exclude. With respect to the fact that witnesses have ***not*** had other claims or lawsuits brought against them, defendants should be permitted to testify that they have never been sued for fraud or deceptive practices before this lawsuit.

With regards to lawsuits filed against a particular witness, defendants are unaware of any evidence of any such lawsuits, and London does not identify any such lawsuits and defendants are unaware of any.

However, London has listed Roland Kaeser as one of his "Will Call" witnesses. Defendants have learned that there was a judgment for fraud entered against Kaeser by an Illinois court. *See In re Estate of Sevy*, 2014 IL App (2d) 121084-U (affirming judgment against Kaeser for common law fraud and violation of the Illinois Consumer Fraud Act). Evidence of that fraud judgment, and the underlying facts, are admissible on the credibility of Kaeser, his testimony concerning interactions with defendants and any statements made or actions by the defendants.

**No. 14 – Impermissible Bolstering.** London requests "[a]n order to bar impermissible bolstering of defendants." It is not clear what specific evidence London is seeking to exclude, so defendants cannot respond to this motion in limine.

**No. 15 – Usual Custom & Practice.** London requests "[a]n order to bar that a defendant was simply following usual custom and practice." It is not clear what specific evidence London is seeking to exclude, so defendants cannot respond to this motion in limine.

**No. 21 – Defendants' Good Character Or Reputation.** London seeks to bar testimony of the "good character of any of the defendants for the purpose of establishing that they did engage in fraud or deceit involving the plaintiffs." Again, London does not develop this motion in any way, so it should be denied for this reason.

In any event, London has put defendants' character at issue by accusing them of fraud and deceptive conduct; consequently, they are permitted to introduce evidence to rebut London's charge in the form of reputation or opinion evidence. *See* Fed. R. Evid. 405 ("When evidence of a person's character or character trait is admissible, it may be proved by testimony about the person's reputation or by testimony in the form of an opinion.").

**No. 22 – Kaeser Payments.** London seeks to exclude evidence that would reduce his damages claims. Specifically, London is seeking to recover from defendants monies he did not pay Vyasil but instead were paid by his former legal client Roland Kaeser. Yet, London has moved to exclude evidence that Kaeser actually made payments that London now claims is part of his damages. This evidence relates to the fourth allegedly fraudulent "Tannehill" invoice: "Internet Marketing for the website www.veoxo.com for the month of October 2010." That payment was made by Kaeser, not London. *See* Dkt. No. 374-1 at ¶61. However, Kaeser is not a party to this case, there is no evidence of a contract between them and there is no evidence that London relied to his detriment in connection with this invoice. Thus, this evidence should be allowed. Further, London should be precluded from recovering damages on behalf of Kaeser as a matter of law.

**No. 23 – GMAX Contract.** London seeks to exclude evidence or argument that there was no GMAX contract. His argument is based solely on the fact that "[d]efault has already been entered on the breach of the GMAX contract and the Court has already ruled on this issue."

5

Yet, as defendants pointed out on summary judgment, and the Court agreed, a Rule 55(a) entry of default against Vyasil does not impair the right of Wittstrom and Tannehill or affect their defense of London's claims against them as individuals to contest London's allegations. *See United States v. Borchardt*, 470 F.2d 257, 260 (7th Cir. 1972) ("Moreover, even if [the co-defendant] had suffered a default judgment before the Government moved for summary judgment against appellants, they would not have been barred from proceeding with their own defense to the foreclosure action."); *Hawkeye-Sec. Ins. Co. v. Schulte*, 302 F.2d 174, 177 (7th Cir. 1962) ("Appellee argues that through the default of [the co-defendants] the allegations of the complaint are to be taken as true. This argument assumes that they were the only parties entitled to contest the allegations of the complaint. Since appellant was a proper party, the default of these two defendants may not preclude appellant's right in this respect."); *see* Dkt. 390 at 5 n.3 ("London misstates the effect of the entries of default. By themselves, entries of default do not determine rights. Also, London cites no case for the sweeping proposition that a default against one defendant means that the non-defaulting defendants are somehow bound by the other defendant's default.") (citations omitted).

**No. 24 – Completed Software Development Work.** London seeks to exclude evidence and argument that Vyasil performed any software development work for him or his companies. Like the previous motion in limine, London's argument is based on the Rule 55(a) entry of default entered against Vyasil. For the same reasons given above, the entry of default against Vyasil does not affect the claims against Wittstrom and Tannehill or impair their ability to contest London's allegations.

Furthermore, evidence that Vyasil did, in fact, perform services in exchange for the payments made is directly relevant to showing that London was not "defrauded" out of anything,

6

and that to the extent Vyasil did not deliver the software he paid for, that should be addressed through his claims for breach of contract against Vyasil, and not as fraud claims against Wittstrom and Tannehill.

**No. 26 – Status Of Corporate Plaintiffs.** London seeks to exclude evidence that the corporate plaintiffs have been suspended for failure to pay franchise renewal fees. Yet, London wants to introduce evidence that Vyasil was suspended. There is no evidentiary reason to treat them differently.

To the extent London seeks to bar evidence regarding the dates of incorporation of LinkEpic and GMAX, that evidence should be permitted. For example, LinkEpic was not incorporated until more than a year after it purportedly entered into a contract with Vyasil for software development services and months before it entered into SEO services. Defendants should be able to juxtapose London's signing contracts on behalf of a company that did not exist against his claims that Tannehill sent invoices with his name on them to induce payments. Likewise, the date of GMAX's incorporation, which was months after Wittstrom's "silent" misrepresentation in March 2010, is relevant to contextualizing London's alleged reliance on Wittstrom's conduct.

**No. 27 – London's Law Website.** London seeks to exclude evidence that Vyasil completed work on his law website, jlondonlaw.com. London claims such evidence would be "highly misleading and prejudicial" because this website is less sophisticated than the LinkEpic website or GMAX project. London also argues that this evidence should be excluded because it was not the subject of expert testimony.

This evidence goes directly to the heart of London's fraud claims generally, as it tends to disprove the idea that the defendants were engaged in a massive scheme to defraud London. The

fact is that London did not make any legal claims in connection with the work Vyasil did on his law website or SEO services for the site, and is still using the website today. More specifically, the Court will recall that work for the law website was listed on the same invoices that London claims were sent by Tannehill to fraudulently induce payments for LinkEpic. Defendants should be allowed to show the jury the website that Vyasil built for London in 2010—and, again, that is still in use today—as further evidence that the invoices with Tannehill's name on them were not fraudulent.[2] Defendants are entitled to argue the inference that London's use of a website that was done by the same defendant at the same time he was being defrauded is not credible.

Furthermore, the law website is relevant to showing the type of software development services that Vyasil was capable of providing. Defendants should be permitted to argue to the jury that it would not have been reasonable for London to expect a company that built websites such as jlondonlaw.com could develop an intelligent mobile conversational assistant or mobile operating system ("GMAX") that could compete against the likes of Apple or Microsoft, and that therefore London's reliance on any statements to that effect would not have been reasonable.

## CONCLUSION

WHEREFORE, for the foregoing reasons, defendants Karl Wittstrom and Ryan Tannehill respectfully request that this Court deny Justin London's motions in limine Nos. 2, 3, 6, 7, 9, 10, 14, 15, 16, 20, 21, 22, 25, 26 & 27 and award any such other relief as the Court deems fit.

---

[2] *See* https://web.archive.org/web/20100511053309/http://jlondonlaw.com/Default.aspx (London's law website as it existed in May 2010).

Dated:  September 6, 2019                               Respectfully submitted,

                                                                /s/ David M. Friebus
                                                                John M. Touhy
David M. Friebus
BAKER & HOSTETLER LLP
One North Wacker Drive, Suite 4500
Chicago, Illinois 60606
(312) 416-6200
(312) 416-6201 (fax)
jtouhy@bakerlaw.com
dfriebus@bakerlaw.com

## **CERTIFICATE OF SERVICE**

The undersigned certifies that he caused the foregoing **DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTIONS IN LIMINE (JURY TRIAL)** to be filed electronically on September 6, 2019. Notice of this filing will be sent to all parties registered on this Court's ECF system. Parties may access this filing through the Court's system.

/s/ David M. Friebus